# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BALLARD, individually and as Trustee of the James T. Ballard Millennium Trust, dated January 9, 2002,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WEST HOLLYWOOD, et al.,<br><br>Defendants. | Case No. CV 23-4367 FMO (AGRx)<br><br>**ORDER RE: MOTION TO DISMISS** |

Having reviewed and considered all the briefing filed with respect to the City of West Hollywood's ("City"), City Council of the City of West Hollywood's ("Council"), and West Hollywood Rent Stabilization Commission's (collectively, "defendants") Motion to Dismiss [] (Dkt. 18, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND[1]

Passed in 1985, West Hollywood Municipal Code ("WHMC") § 17.04.010, et seq. regulates

---

[1] Because the parties are familiar with the facts of this case, the court recites them only as necessary.

rent increases for rental units within the City of West Hollywood by limiting the maximum allowable increase to 75% of the increase of the Consumer Price Index during the preceding 12 month period. See WHMC § 17.36.020. On April 6, 2020, the Council passed an emergency ordinance in response to the COVID-19 pandemic that temporarily prohibited commercial landlords from evicting a tenant based on an inability to pay rent, see WHMC Ordinance No. 20-1103U ("Emergency Ordinance") § 2.A., and issued a temporary moratorium on rent increases on occupied, rent-stabilized units. See id. § 4.A. The Emergency Ordinance permitted landlords to seek an exemption from the moratorium by applying for individualized rent adjustments in accordance with the procedures set out in WHMC §§ 17.44, et seq. See id. On November 7, 2022, the Council repealed the Emergency Ordinance, but capped maximum annual rent increases at no more than three percent. See WHMC Ordinance No. 22-1194 § 3 ("Termination Ordinance"); see also WHMC § 17.36.020.

Plaintiff's Complaint raises the following causes of action: (1) substantive due process, 42 U.S.C. § 1983, (see id. at ¶¶ 108-16); (2) procedural due process, 42 U.S.C. § 1983, (see id. at ¶¶ 117-22); (3) uncompensated per se takings, 42 U.S.C. § 1983, (see id. at ¶¶ 123-33); (4) uncompensated regulatory takings, 42 U.S.C. § 1983, (see id. at ¶¶ 134-38); (5) violations of the ex post facto clause of Article I, Section 10 of the United States Constitution, (see id. at ¶¶ 139-43); (6) violations of due process under Article I, Sections 7 and 15 of the California Constitution, (see id. at ¶¶ 144-48); and (7) uncompensated regulatory takings in violation of Article I, Section 19 of the California Constitution. (See id. at ¶¶ 149-54). Plaintiff's claims are based primarily on the Emergency Ordinance's rent increase freeze and on the Termination Ordinance's limit on rent increases to three percent. (See id. at ¶¶ 1-2). With the instant Motion, defendants move to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (See Dkt. 18, Motion at 1).

---

[2] All further "Rule" references refer to the Federal Rules of Civil Procedure unless otherwise indicated.

**LEGAL STANDARD**

I.     RULE 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994) (plurality opinion), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v.

Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984), abrogated on other grounds by, 109 S.Ct. 1827 (1989).

## DISCUSSION

I.  PLAINTIFF'S TAKINGS CLAIMS.

In Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108 (1985), the Supreme Court reiterated the long-standing rule that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id. at 186, 105 S.Ct. at 3116, overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania, 139 S.Ct. 2162 (2019); see also Patel v. City of S. El Monte, 2022 WL 738625, *1 n.1 (9th Cir. 2022) (noting that Williamson's finality requirement was unaffected by Knick). The finality requirement recognizes that "local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other." MacDonald, Sommer & Frates v. Yolo Cnty., 477 U.S. 340, 350, 106 S.Ct. 2561, 2566 (1986). Thus, although "[t]he finality requirement is relatively modest[,]" Pakdel v. City & Cnty. of San Francisco, California, 141 S.Ct. 2226, 2230 (2021), "[w]hen such flexibility or discretion may be brought to bear on the permissible use of property as singular as a parcel of land, a sound judgment about what use will be allowed simply cannot be made by asking whether a parcel's characteristics or a proposal's details facially conform to the terms of the general use regulations." Suitum v. Tahoe Reg'l Plan. Agency, 520 U.S. 725, 738-39, 117 S.Ct. 1659, 1667 (1997). In short, a takings claim must be dismissed for lack of finality where the plaintiff could have, but did not, seek a zoning variance. See Patel, 2022 WL 738625 at *2 ("Although a plaintiff need not always exhaust every administrative procedure, failure to do so may render a claim unripe if avenues still remain for the government to clarify or change its decision.") (internal quotation marks and emphasis omitted).

Here, it is undisputed that both the Emergency and Termination Ordinances permit landlords to seek exemptions from the rent increase limits. See Emergency Ordinance § 4.A.; WHMC §§ 17.44.010-40; (see also Dkt. 1, Complaint at ¶ 2) (noting the existence of rent adjustment by application). Accordingly, before pursuing his takings claims, plaintiff was required to secure a final decision by availing himself of this process. See Patel, 2022 WL 738625 at *2; see also Better Hous. for Long Beach v. Newsom, 452 F.Supp.3d 921, 935 (C.D. Cal. 2020) ("Other than . . . a distinction not relevant here . . . the California Takings Clause is interpreted identically to its federal counterpart."). The Complaint makes clear that he did not do so. (See Dkt. 1, Complaint at ¶¶ 2, 82-87).

Although plaintiff alleges that the rent adjustment application process is "illusory, arbitrary, overly burdensome, unreasonable, and practically impossible[,]" (Dkt. 1, Complaint at ¶ 2), this general allegation is contradicted by the only specific example that plaintiff provides in the Complaint – the upshot of which is that plaintiff has personally succeeded in obtaining annual rent increase adjustments through the prescribed process. (See id. at ¶¶ 88-89). The so-called "futility exception" still requires evidence that plaintiff sought to follow the procedures for a variance or exception, but plaintiff provides no such allegations. (See, generally, Dkt. 1, Complaint at ¶¶ 82-89); see Patel, 2022 WL 738625 at *2 ("[Plaintiff] did not satisfy the finality requirement, nor was he excused by the futility exception. Under either argument, courts generally require that a plaintiff seek a variance or exemption."). In short, the court is persuaded that plaintiff's takings claims are not ripe.

II. PLAINTIFF'S DUE PROCESS CLAIMS.

Plaintiff's first, second, and sixth claims allege violations of procedural and substantive due process under the United States and California Constitutions. (See Dkt. 1, Complaint at ¶¶ 108-22, 144-48). The court considers the federal and state constitutional due process claims together. See Allen v. Clendenin, 2023 WL 6213634, *8 (E.D. Cal. 2023) ("California's Due Process Clause is identical in scope with the federal due process clause.") (internal quotation marks omitted).

A. Substantive Due Process.

In Kinzli v. City of Santa Cruz, 818 F.2d 1449 (9th Cir. 1987), the Ninth Circuit held that a

substantive due process claim was unripe when "the City ha[d] not yet made a final decision regarding the property." Id. at 1456. The court found that plaintiffs needed to "first obtain final decisions regarding the application of the regulations to their property and the availability of variances[,]" and the "absence of a meaningful application" rendered their substantive due process claim unripe for review. See id. at 1456–57. Here, plaintiff's substantive due process claim is unripe for the same reasons. See supra at § I.; see, e.g., Hoffman Bros. Harvesting, Inc. v. Cnty. of San Joaquin, 2021 WL 4429465, *6 (E.D. Cal. 2021) ("The Court finds Plaintiffs' substantive due process claim unripe for the same reason Plaintiffs' takings claim is unripe.").

  B. Procedural Due Process.

To allege a violation of procedural due process, plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). A protected liberty or property interest "arises from legitimate claim(s) of entitlement . . . defined by existing rules or understandings that stem from an independent source such as state law." Erdelyi v. O'Brien, 680 F.2d 61, 63 (9th Cir.1982) (internal quotation marks omitted); see Dittman v. State of California, 191 F.3d 1020, 1029 (9th Cir.1999) ("A threshold requirement to a . . . procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution.") (internal quotation marks omitted). Whether a city's rent control ordinance creates a property interest in a landlord's desired rent increase "is determined largely by the language of the [ordinance] and the extent to which the entitlement is couched in mandatory terms." Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994). Where a city exercises "the unbridled discretion of an agency" to "approve, conditionally approve or reject" an alleged entitlement, then there is no "legitimate claim" to that entitlement to sustain a due process claim. See Bateson v. Geisse, 857 F.2d 1300, 1305 (9th Cir. 1988) (denying landowner's claimed "property interest" in a land-use application "because of the lack of any significant substantive restrictions on the City Council's powers" to grant or deny the application).

Here, as explained above, see supra at § I., both the Emergency Ordinance and the Termination Ordinance permit landlords to seek exemptions from the rent increase limits. See

Emergency Ordinance § 4.A.; WHMC §§ 17.44.010-40. As such, plaintiff has not alleged that a proposed rent increase constitutes a mandatory legal entitlement over which defendants lack discretion. See Bateson, 857 F.2d at 1305. Moreover, when "the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 969 (9th Cir. 2003) (internal quotation marks omitted). Thus, "[e]ven assuming that plaintiff had a vested interest in the rent increases allowed by prior law, it received all the process due it [if] the City's elected officials discharged their legislative responsibilities in the manner prescribed by law." Sierra Lake Reserve v. City of Rocklin, 938 F.2d 951, 957 (9th Cir. 1991), opinion vacated in part, 987 F.2d 662, 663 (9th Cir. 1993) ("We retain Part II because the due process and equal protection claims it considered are unaffected by Yee.").

Here, the Complaint is devoid of any allegations that the Council did not perform its responsibilities in the normal manner prescribed by law. (See, generally, Dkt. 1, Complaint at ¶¶ 108-22, 144-48). At most, plaintiff argues that "West Hollywood went to great lengths to obfuscate the elimination of the Annual Increases . . . [and that] [t]here was a clear plan to deprive RRP Owners of the Annual Increases . . . . This was intentional deprivation and confiscation planned behind closed doors." (Dkt. 22, Opposition to [] Motion to Dismiss [] ("Opp."), at 20-21). Setting aside the fact that these allegations do not appear in his Complaint, (see, generally, Dkt. 1 at ¶¶ 108-22, 144-48), plaintiff's conclusory assertions in his Opposition that defendants sought to eliminate annual rent increases for certain years is not tantamount to an allegation that defendants failed to follow legislative procedures or that plaintiff was deprived of notice and an opportunity to be heard before the passage of either ordinance. See also Kagan v. City of Los Angeles, 2022 WL 16849064, *2 (9th Cir. 2022) ("Notice and a meaningful opportunity to be heard are the hallmarks of procedural due process.") (internal quotation marks and alteration omitted). In short, the court is persuaded that plaintiff's procedural due process claim must be dismissed.

III.   EX POST FACTO CLAUSE.

Finally, the court considers plaintiff's claim for violations of the ex post facto clause. (See Dkt. 1, Complaint at ¶¶ 139-43). The Supreme Court long ago limited the application of the ex

7

post facto clause to criminal or penal statutes that fall within one of four categories, none of which apply here. See Calder v. Bull, 3 U.S. 386, 390 (1798) (describing the four categories to which the ex post facto clause may apply); Stogner v. California, 539 U.S. 607, 611, 123 S.Ct. 2446, 2450 (2003) (noting that Calder still provides "an authoritative account of the scope of the Ex Post Facto Clause"); see also Taverns for Tots, Inc. v. City of Toledo, 341 F.Supp.2d 844, 860 (N.D. Ohio 2004) (The ex post facto clause "applies only to statutes that are criminal or penal in nature."). Thus, because the ordinances at issue are neither criminal nor penal, the ex post facto clause does not apply.[3] In short, plaintiff's ex post facto clause claim must be dismissed.

IV. LEAVE TO AMEND.

Rule 15 of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (The policy favoring amendment must "be applied with extreme liberality."). However, "[i]t is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802 (1971).

Having liberally construed and assumed the truth of the allegations in the Complaint, the court is persuaded that plaintiff's claims cannot be saved through amendment. See Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely."). Accordingly, plaintiff's Complaint will be dismissed without leave to amend.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

---

[3] Plaintiff contends that "[t]he claim for Violation of the Ex Post Facto Clause offers an invitation for the courts to reconsider the limits of Calder v. Bull, 3 U.S. 386 (1798)[.]" (Dkt. 22, Opp. at 1 n.2). The Supreme Court recently reiterated the viability of the Calder case. See Stogner, 539 U.S. at 611, 123 S.Ct. at 2450. In other words, this court has no authority or basis to disregard binding precedent.

1. Defendants' Motion **(Document No. 18)** is **granted**.

2. The Complaint **(Document No. 1)** is **dismissed without leave to amend**.

3. Plaintiff's <u>Ex Parte</u> Application to Stay [] **(Document No. 32)** is **denied as moot**.

4. Judgment shall be entered accordingly.

Dated this 3rd day of January, 2024.

                                      /s/
                              Fernando M. Olguin
                        United States District Judge